**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**LATRAVION BELL**                                                                    **PLAINTIFF**
**ADC #186624**

**v.**                          **Case No. 4:25-cv-00541-LPR-JJV**

**ARLIE WEST,** *Corporal*                                                         **DEFENDANT**

<u>**ORDER**</u>

The Court has received the Partial Recommended Disposition (PRD) submitted by United States Magistrate Judge Joe J. Volpe (Doc. 18).  No objections have been filed, and the time for doing so has expired.  Nonetheless, as it always does, the Court has undertaken a *de novo* review of the PRD in light of the entire case record.  Unlike the PRD, the Court believes that Defendant's Motion to Dismiss (Doc. 16) should be granted.  This is so for the reasons explained below.

Let's start with the areas of agreement between the Court and the PRD.  The Court agrees with and adopts the PRD's description of the Complaint's allegations set forth in the first paragraph of the PRD's Discussion section.[1]  The Court also agrees with and adopts the PRD's description of the reasonable inferences to be drawn from the Complaint.  That description is set forth in the third paragraph of the PRD's Discussion section.[2]  To make a long story short, for purposes of a motion to dismiss, we should assume that: (1) as Plaintiff was getting out of bed, he fell and hit his face on the door post; (2) this caused lacerations to his nose bad enough to later require four stiches; (3) the fall knocked Plaintiff unconscious and resulted in significant bleeding; (4) Defendant was immediately told all this by Plaintiff's fellow inmate; (5) Defendant didn't seek

---

[1] PRD (Doc. 18) at 2.  To be clear, this adoption concerns the section titled "III. Discussion" that begins on page 2 of the PRD, and not the section titled "I. Discussion" found on page 1 of the PRD.

[2] *Id*. at 2–3.  This adoption also concerns the section titled "III. Discussion."

help for 30-40 minutes, because an inmate count was taking place; and (6) Plaintiff thus lay unconscious in a pool of blood for those 30-40 minutes.

Now to the areas of disagreement. The Court does not agree with the PRD that Plaintiff alleged any injury or detrimental effect from the delay in treatment.[3] The PRD can't point to any actual allegations Plaintiff makes about the effect of the delay. That's not surprising, because Plaintiff makes no such allegations. Instead, the PRD relies on the Relief section of the Complaint, where Plaintiff says he is seeking "[a] government pardon, [and] compensation for stress, pain, and suffering."[4] In the Court's view, the PRD has taken this statement out of context and incorrectly treated it as an allegation that *the delay in care* caused stress, pain, and suffering.[5] This is especially problematic because the Complaint included a claim for the underlying fall and lacerations.[6] The "stress, pain, and suffering" referenced in the Relief section of the Complaint is far more naturally read to be describing the result of the original injury and not the delay in care. If Plaintiff meant otherwise, he had an obligation to be more specific with his allegations about the injury caused by the delay in care.

In any event, nothing in the Complaint makes it plausible that the delay caused Plaintiff additional stress, pain, or suffering. Recall that the PRD posits, and the Court agrees, that Plaintiff was lying unconscious in a pool of blood for 30-40 minutes while care was delayed. If this is right, then Plaintiff didn't have any stress, pain, or suffering for those 30-40 minutes—because he was

---

[3] *See id*. at 3. The Court agrees with Defendant that, to state a viable claim here, Plaintiff must allege that the asserted delay in treatment resulted in some injury or detrimental effect. *See* Def.'s Br. in Supp. of Mot. to Dismiss (Doc. 17) at 2. The Court does not read the PRD to contend otherwise. *See* PRD (Doc. 18) at 3 (discussing the *Livingston* case).

[4] Compl. (Doc. 1) at 5.

[5] *See* PRD (Doc. 18) at 3.

[6] That claim did not pass screening. *See* Screening PRD (Doc. 9) at 2–3; Order Adopting Screening PRD (Doc. 15).

*unconscious*.[7]  And nothing in the Complaint makes it plausible that the alleged delay in care made the actual injury sustained worse, the treatment required worse, or the recovery period worse.

Despite the foregoing, the Court cannot simply grant the pending Motion to Dismiss.  This is because: (1) the Magistrate Judge issued the PRD without waiting for a responsive brief from Plaintiff; and (2) given that the PRD recommended denying the Motion to Dismiss, Plaintiff had no incentive to file an objection.  In these circumstances, the right thing to do is to give Plaintiff 30 days to file a Response to the Motion to Dismiss, which can argue against both the Motion and the position espoused in this Order.  The Court will review any such filing and decide whether it changes the Court's mind.[8]  If Plaintiff does not file a timely Response to the Motion to Dismiss, the Court will grant the Motion and dismiss Plaintiff's remaining claim consistent with the points set out above.

IT IS SO ORDERED this 21st day of January 2026.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[7] What if the inference is wrong?  What if he was conscious for all or part of the 30-40 minutes?  That would lead to different problems for the Plaintiff.  In that scenario, it might not be clear that there was an objectively serious need for immediate treatment.

[8] One final point is worth mentioning.  On July 16, 2025, the Magistrate Judge issued a PRD recommending that certain claims be screened out of this case.  *See* Screening PRD (Doc. 9).  On September 2, 2025, the Court adopted that PRD.  *See* Order Adopting Screening PRD (Doc. 15).  The Court's language adopting the PRD might have led to some confusion.  This is because the July 2025 PRD, in addition to screening out certain claims, also noted that, "for screening purposes only," the Magistrate Judge found Plaintiff to have plausibly pled the claim at issue here today.  Screening PRD (Doc. 9) at 2.  The Court does not believe its adoption of the July 2025 PRD should be read as an adoption of that position.  That is because the Magistrate Judge had "entered a separate Order directing service of that claim . . . ."  *Id*.  The Court's intent in reviewing the PRD was—and always is—to review only the propriety of the Magistrate Judge's decision with respect to the claims the PRD recommends be screened out.  This is especially true where the remaining claim was served by a separate Order.  In any event, the Court wants to emphasize that all screening decisions in which a plaintiff is found to have plausibly pled a claim should be considered tentative and subject to serious re-examination if a motion to dismiss is filed.  A screening decision is supposed to be a very quick decision made by a judge unaided by the adversarial process.  It is easy to imagine missing a deficiency with a Complaint that is later pointed out by a persuasive motion to dismiss.  The fact that a Court Order has let a claim proceed past screening should never be a significant consideration in resolving an adversarial motion to dismiss.